# IN THE COURT OF APPEALS OF IOWA

No. 13-0258
Filed April 30, 2014

**FEDERAL EXPRESS CORPORATION,**
    Petitioner-Appellee,

**vs.**

**MASON CITY HUMAN RIGHTS COMMISSION,**
    Respondent,

**and**

**LORI JOHNSON,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


    Lori Johnson appeals from the judicial review decision reversing the

decision of the Mason City Human Rights Commission that found discrimination.

**AFFIRMED.**


    Mark Sherinian of Sherinian & Hasso, West Des Moines, for appellant.

    Emily Pera, Irvine, California, and Angie Jo Schneiderman of Bernstein,

Moore, Heffernan, Moeller & Johnson, L.L.P., Sioux City, for appellee.



    Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Lori Johnson appeals from the district court's ruling on petition for judicial review, which held the Mason City Human Rights Commission's ("Commission") decision that Johnson was discriminated against, retaliated against, and constructively discharged by her employer, Federal Express ("FedEx"), was not supported by substantial evidence. Johnson contends the court erred (1) in finding there was not substantial evidence FedEx discriminated against her based on her sex, (2) in finding there was not substantial evidence of retaliation, and (3) in finding there was not substantial evidence of constructive discharge. We affirm the judgment of the district court.

I.

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs review of the Commission's decision. *See Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 740 (Iowa 2003). We apply chapter 17A to the final agency action and review the district court's decision "to determine if our conclusions are the same reached by the district court." *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 612 (Iowa 2002). If our conclusions are the same, we affirm the judgment of the district court. We review final agency action for correction of errors at law. *Houck v. Iowa Bd. of Pharmacy Exam'rs*, 752 N.W.2d 14, 16 (Iowa 2008). If the agency's findings are supported by substantial evidence, those findings are binding upon us. *Hough v. Iowa Dep't of Pers.*, 666 N.W.2d 168, 170 (Iowa 2003).

"'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1) (2011). "[E]vidence is not insubstantial merely because it would have supported contrary inferences." *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003). The adequacy of the evidence must, however, be viewed "in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it." Iowa Code § 17A.19(10)(f)(3). We perform a fairly intensive review of the record to avoid rubber-stamping the agency's finding. *Caselman*, 657 N.W.2d at 499. "In our fairly intensive review, we view the record as a whole, which includes a consideration of evidence supporting the challenged finding as well as evidence detracting from it." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525-26 (Iowa 2012) (citations omitted).

The district court "shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is . . . [b]ased upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law" or "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law." Iowa Code § 17A.19(10)(*l*), (m).

II.

On July 20, 2007, Johnson filed a charge of discrimination with the Commission, alleging FedEx discriminated against her on the basis of her sex and disability and retaliated against her for filing a prior complaint with the Commission, all in violation of the Mason City Human Rights Code.[1]  The unlawful conduct set forth in the complaint was that FedEx allegedly repeatedly failed to grant her request for an accommodation for her disability.  On October 23, 2007, Johnson filed a second charge of discrimination with the Commission, alleging that FedEx constructively discharged her from her employment in violation of the Mason City Human Rights Code.  The unlawful conduct alleged in the complaint was that FedEx's repeated failure to grant her request for an accommodation for her disability forced her to quit her employment.  At some point during proceedings before the Commission, Johnson withdrew her disability-related claims.  She never filed any further complaints or other documents alleging any other act or acts of discrimination or retaliation.

Johnson's complaints were consolidated and came on for hearing before Administrative Law Judge William G. Blum.  The record shows Johnson began her career with FedEx in 1983 as a courier in Montana.  She transferred to the FedEx station in Clear Lake/Mason City in 2003.  In February 2004, she commenced employment as a swing driver.  FedEx uses couriers to deliver and pick-up packages from its customers.  Couriers are assigned routes, or set

---

[1] The Mason City Human Rights Code adopts and incorporates by reference the most current edition of the Iowa Civil Rights Act, Iowa Code chapter 216.  Mason City Ordinance 2-10-2.

geographic areas, within a station's territory. A swing driver is a courier that does not have a set route but who covers the routes of other couriers during vacations and other absences. There are no material differences between the job duties and functions of a swing driver versus a route driver: both positions deliver and pick-up packages. Indeed, because swing drivers cover the set routes of other couriers during absences, swing drivers are necessarily performing the exact same job as couriers with set routes.

A "position" is a particular job, such as a swing driver or courier. Pursuant to company policy, an employee with a "warning letter" on file cannot apply for a "position" for a period of twelve months following the issuance of a "warning letter." A "route" is the service area to which a courier is assigned. Routes are posted internally. Pursuant to company policy, an employee with an active disciplinary letter cannot bid on a route unless no other eligible employee within the station without an active disciplinary letter bids on the route.

In August 2006, Johnson was diagnosed with multiple sclerosis. Although it is not disputed that she was fully able to perform the functions of the swing driver position without accommodation, she sought a set route position because she and her physician thought it would be better for her. There are four instances in which Johnson sought or thought she should be able to seek to change positions or bid on a route that might meet her desired accommodation. On none of the four occasions did Johnson obtain a different position or successfully bid on a route.

After hearing the testimony of numerous witnesses and reviewing the numerous exhibits received into evidence, ALJ Blum, in a thorough and well-reasoned proposed decision, dismissed Johnson's complaint. ALJ Blum, applying the familiar *McDonnell Douglas*[2] burden-shifting analysis, concluded that FedEx articulated legitimate and non-discriminatory reasons for its actions. Specifically, Johnson was precluded from applying for a position or bidding on a route because Johnson had an active warning letter in her file. On the one instance a route became available for bid to those with an active warning letter or letters, Johnson declined to bid on the position and instead took medical leave. There was no showing of pretext.

The Commission's final decision and order differed greatly from ALJ Blum's proposed decision. The Commission found FedEx discriminated against Johnson on the basis of her sex, retaliated against her for filing a prior complaint, and constructively discharged Johnson. On judicial review, the district court reversed the Commission, determining the Commission's findings were not supported by substantial evidence; its application of the law to the facts was irrational, illogical, and wholly unjustifiable; and Johnson failed to prove discrimination, retaliation, or constructive discharge.

III.

Johnson contends the district court erred in finding the Commission's decision was not supported by substantial evidence. She argues the court "failed to apply the correct standard of review" in that it improperly weighed the

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

evidence, which is solely the function of the Commission. *See Arndt v. City of Le Claire*, 728 N.W.2d 389, 394-95 (Iowa 2007). She argues the court "at virtually every opportunity" "disregarded evidence supporting the Commission's findings and instead gave credence to FedEx's explanations." We disagree. This is not a case in which the district court or this court is disregarding the evidence supporting the Commission's findings or reweighing the evidence to reach a different result. This is a case in which there is no evidence supporting the Commission's findings. Quite simply, the Commission's decision is rife with factual error, legal error, and irrational analysis. In contrast, the district court's decision was thorough, well-researched, and well-reasoned.

First, the district court reasoned, there was no evidence of an adverse employment action. The position and/or routes that Johnson sought were materially indistinguishable from the position she held. Indeed, the position she held, while having the same job functions, actually paid more than the positions she sought. Second, the district court concluded, FedEx articulated legitimate, non-discriminatory reasons for its conduct. Specifically, route restructuring and Johnson's own disciplinary record precluded her from obtaining the position and/or routes she desired. Third, the district court continued, the Commission's conclusion that FedEx's employment policies were modifiable at will was not supported by substantial evidence. The district court also explained that there was no evidence in the record establishing causation on the retaliation claim and no evidence in the record of any similarly-situated person to support an inference of discrimination or retaliation.

Although we need not repeat the reasoning of the district court in full here, there are a few items of great importance that should be addressed in more detail. First, the entire factual predicate of the Commission's decision—that FedEx's position and route policies are "modifiable"—is wholly without record support. Instead, it appears the Commission's finding is based on its failure to distinguish between a "position" and a "route," the different processes required to apply for a position or bid for a route, and the different eligibility requirements to apply for a position or bid on a route. Throughout its decision, the Commission did not distinguish between "route" and "position" and the different policies (such as the People Manual and the People Best Practices Manual) that apply to each. Where the commission found discrimination because FedEx did not modify its policies to accommodate Johnson, even Johnson testified the policy applicable in the particular circumstance was never modified or there was no exception to the policy.

Second, it was irrational to conclude that Johnson's failure to obtain a new position or a set route constituted adverse employment action. By necessity, Johnson's current position entails the same functions and responsibilities as a set route courier because she covers those routes during absences. The only difference she could identify between the positions was that the set route involves less multitasking. Even assuming that is true, which seems unlikely, that minor distinction does not render her inability to obtain a different position or route an adverse employment action. *See Farmland Foods*, 672 N.W.2d at 742 (stating an adverse employment action does not include "minor changes in

working conditions that only amount to an inconvenience"). In employment cases, there is a "clear trend of authority . . . to hold that a purely lateral transfer, that is a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 2002). Likewise, a denial of a lateral position change cannot rise to the level of a materially adverse employment action. *See Recio v. Creighton Univ.*, 521 F.3d 934, 939–40 (8th Cir. 2008) (citing extended duration of employer-mandated counseling, failure to notify of job vacancy, changes in work schedule, denial of opportunity to teach certain classes, maintenance of cold temperature in office, and faculty shunning); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 929 (8th Cir. 2007) (listing failure to provide training and orientation, denying access to work tools, failure to reinstate to prior position, addition of negative reports and reprimands to personnel file, exclusion from meetings, and denial of training); *Tyes v. Wilhoit*, 7 Fed. App'x 538, 539 (8th Cir. 2001) (concluding employee suffered no adverse employment action by denial of lateral transfer); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (determining transfer that does not entail change in position, title, salary, or any other aspect of employment does not rise to level of adverse employment action).

Third, the Commission's conclusion that FedEx's decision not to allow Johnson to change positions or obtain a route outside the normal processes is evidence of discrimination and/or retaliation is puzzling at best. It is not disputed that Johnson could perform the essential functions of the swing driver position. It

is also not disputed that Johnson has not asserted a claim for disability discrimination or failure to accommodate. It is also not disputed that FedEx had no duty to place her in a different position or let her bid on a route outside its normal processes. Finally, it is also not disputed that there is no evidence in this record of any similarly-situated person—an employee able to perform the functions of the position but requesting a position change or a new route outside the normal processes—who was granted such a request. In the absence of any evidence of a similarly-situated person being treated differently, the fact that Johnson did not obtain a position or route to which she was not legally entitled and was precluded from obtaining because of non-modifiable company policy is evidence of nothing. *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (holding plaintiff failed to establish prima facie case of discrimination where she was not eligible for position and did not identify comparators); *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 770 (8th Cir. 2008) (holding employee's claim failed where he could not identify employee "similarly situated in all relevant respects" that received different treatment); *Burchett v. Target Corp.*, 340 F.3d 510, 519 (8th Cir. 2003) (holding employee could not establish claim for discrimination where employer denied request for transfer to accommodate disability when it was not disputed that employee could perform the functions of former position and had disciplinary action preventing the transfer); *Clark v. Francis Howell Sch. Dist.*, 47 Fed. App'x 427, 428 (8th Cir. 2002) (holding that plaintiff failed to establish prima facie case of sex discrimination where he did not show that he was similarly-situated in all material

respects to coworker accommodated differently); *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002) (holding that terminated employee could not establish pretext where employee did not identify similarly-situated person and instead relied on conclusory allegations the employer was "out to get him"); *Parada v. Great Plains Int'l*, 483 F. Supp. 2d 777, 807-08 (N.D. Iowa 2007) (holding claim fails where plaintiff failed to identify any male comparator).

We have considered all of Johnson's arguments and find them to be without merit. Accordingly, the judgment is affirmed.

**AFFIRMED.**