# IN THE COURT OF APPEALS OF IOWA

No. 20-0419
Filed September 1, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DARIAN LENSGRAF,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Muscatine County, Tom Reidel, Judge.


Darian Lensgraf appeals his conviction for first-degree murder. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.


Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

Darian Lensgraf appeals his conviction for first-degree murder. We affirm.

Early in the morning, Lensgraf entered his grandmother's home and stabbed her multiple times with a bayonet, killing her. The State charged Lensgraf with first-degree murder. Lensgraf raised an insanity defense. At trial, Lensgraf and the State presented conflicting expert testimony about Lensgraf's mental state. Ultimately, the jury found Lensgraf guilty as charged.

On appeal, Lensgraf claims there was insufficient evidence to support his conviction.[1] We analyze sufficiency-of-the-evidence questions for corrections of errors at law. *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020). We consider all evidence presented in the light most favorable to the State, and we draw all reasonable inferences in its favor. *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). Importantly, we do not weigh evidence, consider the credibility of witnesses, nor do we attempt to resolve evidentiary disputes. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Our review is limited only to test evidentiary

---

[1] Lensgraf also argues trial counsel was ineffective for failing to object to the admission of certain character evidence at trial. We won't reach the merits of this argument because Iowa Code section 814.7 (2020) precludes our review of ineffective-assistance claims on direct appeal. *See State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020). Section 814.7 became effective on July 1, 2019, and applies to all appeals arising after that date. *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019) ("[W]e hold Iowa Code section[] . . . 814.7, as amended do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019."). Lensgraf's judgment and sentence were entered on March 6, 2020.

We note Lensgraf's arguments that section 814.7 is unconstitutional because it violates the separation of powers as well as equal protection. But our supreme court has already rejected those arguments. *State v. Tucker*, 959 N.W.2d 140, 145 (Iowa 2021) (addressing separation-of-powers argument); *State v. Treptow*, 960 N.W.2d 98, 104 (Iowa 2021) (addressing equal-protection argument).

sufficiency, and so long as substantial record evidence supports the verdict, we will uphold it. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Hearn*, 797 N.W.2d 577, 579–80 (Iowa 2011) (quoting *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008)).

Lensgraf argues the evidence is insufficient because the State failed to prove "malice aforethought," an essential element of first-degree murder.[2] As the jury instructions correctly explained, "malice aforethought" means "a fixed purpose or design to do some physical harm to another which exists before the act is committed."[3] Lensgraf claims he "presented overwhelming evidence to rebut malice aforethought based on [his] documented mental illness[,] which established [he] committed the killing because of mental incapacity." Lensgraf points to the testimony of Dr. Steven Bruce, a clinical psychologist. After the killing, Dr. Bruce interviewed and assessed Lensgraf. At trial, Dr. Bruce testified that Lensgraf suffered from schizophrenia and experienced hallucinations at the time of the

---

[2] In its brief, the State sometimes suggests that the (or, at least, an) issue on appeal is whether "the jury reasonably rejected Lensgraf's insanity defense," as to which Lensgraf bore the burden of proof. In his brief, however, Lensgraf only mentions "insanity" in passing. Instead, Lensgraf frames the issue on appeal as whether the State carried *its* burden of proving malice aforethought. This is most clearly expressed in Lensgraf's "Conclusion" paragraph, where he states: "Based on the evidence, the State failed to establish that [Lensgraf] had the required malice aforethought. Due to this failure, the State did not establish all required elements of the crime and Lensgraf's conviction should be vacated." So we follow Lensgraf's lead by focusing on whether there was sufficient evidence from which the jury could find malice aforethought.

[3] Lensgraf did not object to this instruction. "Where, as here, the jury was instructed without objection, the jury instruction becomes the law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).

killing. Dr. Bruce testified that it was unlikely that Lensgraf had the mental capacity to understand or appreciate the nature of his crimes. Lensgraf argues, "[Dr.] Bruce's testimony was more than enough to rebut that" Lensgraf "had the state of mind to form malice aforethought."

Importantly, though, the question on appeal is not whether evidence might have supported a different verdict. *Cf. Nitcher*, 720 N.W.2d at 556 (recognizing a jury is free to reject certain evidence and credit other evidence). Rather, the question is whether there was evidence to support the jury's actual verdict. "[I]t is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also supported a finding favorable to the defendant." *State v. Keeton*, 710 N.W.2d 531, 535 (Iowa 2006); *see Fed. Exp. Corp. v. Mason City Hum. Rts. Comm'n*, 852 N.W.2d 509, 511 (Iowa Ct. App. 2014) ("[E]vidence is not insubstantial merely because it would have supported contrary inferences." (alteration in original) (citation omitted)).

So we focus on whether there was substantial evidence to support the jury's finding that Lensgraf acted with malice aforethought, "a fixed purpose or design to do some physical harm to another which exists before the act is committed." We think there was. As Lensgraf concedes, and the jury instructions provided, malice aforethought may be inferred from a defendant's use of a dangerous weapon. Here the evidence showed Lensgraf used a dangerous weapon, a bayonet, against his grandmother.[4]

---

[4] The jury instructions defined a "dangerous weapon" as
> any device or instrument designed primarily for use in inflicting death or injury, and when used in its designated manner is capable of inflicting death. It is also any sort of instrument or device actually

Moreover, this is not a case in which the victim was only stabbed once, perhaps as an accident. Rather, the evidence showed Lensgraf inflicted multiple stab wounds. This also supports a finding of malice aforethought. *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) ("The multiple [stab] wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill."); *see also State v. Linderman*, 958 N.W.2d 211, 222 (Iowa Ct. App. 2021) ("A beating of that nature requires inflicting injury over and over such that a jury could infer deliberation and thoughtfulness with each blow.").

Finally, we note the jury was under no obligation to believe Dr. Bruce's opinions about Lensgraf's mental state. The trial court properly instructed the jury to "[c]onsider expert testimony like any other testimony. You may accept it or reject it. You may give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case." The "other evidence in the case" included the testimony of the State's forensic psychologist, Dr. Tracy Thomas. *Cf. State v. Lass*, 228 N.W.2d 758, 768 (Iowa 1975) (noting conflicting psychiatric and lay testimony diverged as to defendant's sanity and holding the issue of sanity was "clearly" for the jury). Dr. Thomas, like Dr. Bruce, based her opinion on generally accepted psychiatric testing and an interview with Lensgraf. But Dr. Thomas reached different conclusions. Dr. Thomas concluded there was insufficient evidence that Lensgraf suffered from any psychotic disorder. Moreover, Dr.

used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Thomas opined that—even assuming Lensgraf suffered from such a disorder—he was still able to understand the nature and quality of his actions and distinguish between right and wrong.

All things considered, there was sufficient evidence Lensgraf acted with malice aforethought when he killed his grandmother by stabbing her multiple times with a bayonet. We reject his challenge to the sufficiency of the evidence, and we affirm.

**AFFIRMED.**